IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No. 23CV95

KATHY STRATTON

Plaintiff

V

CITY OF KANNAPOLIS, Kannapolis Police Officers:
J.M. LIVENGOOD, McCRECHEN, CAUDLE,
HOEHMAN in their individual and official
Capacities, Mecklenburg County, MCDSS Director, JOHN ELLER
MCDSS employee MARTY PRUNTY, in his individual and
official capacity,TYRONE WADE, Mecklenburg County
Attorney In his individual and official capacity,
City of Newburg, MDTA Officers: PATRICK HART,
WILLIAM HARRIS, DANIEL HARMON, PAUL JERRY,
CHARLES COUNTY, Sheriff's Deputies: BOTFORT (Formerly Collins),
BAGWELL, LERCH, BOURGEOIS, WILLIS, G. FIELDS, JOHNSTON,
CHARLES COUNTY, CCDSS employees:
MARY JANE CUPPLES in her individual and official capacity,
KELLY BESWICK, CCCPS Supervisor in her individual and
official capacity, LAURA TALLEY, in her individual and
official capacity as CCDSS Adult Services Supervisor,
John Doe: MCDSS  Employee#3, Employee#4, Employee#5
John Doe: NC State actor# 1, NC Actor#2
                                        Defendants

---

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Kathy Stratton file this complaint against Defendants

and allege the following:

# PRELIMINARY STATEMENT

1.  Plaintiff, Kathy Stratton, pro se bring this action against Defendants for

Deprivation of Rights, under the First, Fourth, Fifth, Fourteenth Amendments, and

civil rights violations. Plaintiff seeks damages and other relief for unlawful

detainment, seizure, and false imprisonment at Plaintiff's residence at 1601

Carlton Avenue, Kannapolis, NC. on January 24, 2020 and thereafter by

Kannapolis Police officers, (hereafter, KPD) using a fraudulent missing person

report regarding Plaintiff's special needs son, Spencer Stratton.

2.  KPD continued and/or participated in violations against Plaintiff sometimes

thereafter (Discovery Determinate) January 24, 2020 by fraudulently entering

Plaintiff's license plate/tag into the NCIS, citing 'missing person'.

3.  This fraud entry prompted Plaintiff's traffic stop in Maryland in March

2020 and resulted in a false arrest on a fraudulent 'hindering/obstruction' charge.

4.  On December 3, 2021 Plaintiff was found not guilty on the 'hindering and

    obstruction' charge which was triggered by KPD January 24, 2020 fraud

    missing person report initiated by MCDSS agent(s), SW, Marty Prunty, and

    the subsequent fraudulent NCIS entry of Plaintiff's vehicle tag.

2

5. Mecklenburg County Department of Social Services (hereafter, MCDSS) social worker, Marty Prunty initiated the fraudulent 'missing person' report with the KPD, naming Plaintiff, Plaintiff's address and other identifying information.

6. However both KPD and Prunty knew through the North Carolina Department of Public Safety (DPS) that the Silver Alert, missing person regarding Plaintiff's son had been cancelled over six (6) months earlier on July 17, 2019.

7. It was known by Defendants that the Silver Alert, missing person report regarding Plaintiff's son was canceled at the request of the issuing agency, Charlotte Mecklenburg Police Department (hereafter, CMPD), that the alert was never re-activated, and that there were no exigent circumstances.

8. Defendants, KPD unlawful tag entry into NCIS is the proximate cause of Plaintiff's March 9, 2020 traffic stop and unlawful arrest in Maryland by Defendant Maryland Transportation Authority (hereafter, MDTA) police officers with Defendant Charles County Deputies (hereafter, CC Deputies) participating in Plaintiff's unlawful arrest.

9. Most aspects of the fraud committed against Plaintiff by Defendants was

3

unknown prior to the March 9, 2020 MDTA traffic stop.

10. Plaintiff's two (2) day jury trial ended on December 3, 2021 with the documented record verifying Defendants' perpetrated violations against Plaintiff in order to effectuate an even more sinister scheme by Defendants to illegally seize and arrest Plaintiff long enough to unlawfully seize Plaintiff's son, and facilitate his unlawful seizure by MCDSS in Maryland and transport to NC.

11. This interstate scheme between Maryland Defendants and North Carolina Defendants to unlawfully seize Plaintiff's son was executed under the guise of a non-existent missing person report referenced above.

12. Defendants' made Plaintiff a victim of their paper and wire fraud by using Plaintiff's vehicle information to illegally entrap and seize Plaintiff's son.

13. MDTA false arrest of Plaintiff prevented Plaintiff from immediately accessing the courts to address MCDSS unlawful seizure of Plaintiff's son.

14. Defendants' clandestine actions further violated Plaintiff's constitutional right to the care, custody and control of Plaintiff son and also the First Amendment right to familial association using a false arrest and using actual fraud documents.

4

15.  Title 42 U.S.C. 1983 color of law violations is alleged (both individually

pursuant to a theory of Monell liability) and negligent law enforcement practices.

Defendants knowingly, willing orchestrated, participated in and executed a

scheme with malice and forethought against Plaintiff's lawful exercise of rights

protected under the United States Constitution in Kannapolis, NC on January 24,

2020 and the exercise of the same rights prior to Plaintiff's arrest by Maryland

Defendants in Maryland on March 9, 2020.

16.  These allegations of violations against Plaintiff's rights are supported

By MDTA body cam, multiple police reports, transcripts of recorded police

admissions, state and federal agency documentation and sworn testimony in

Plaintiff's May 5, 2021 and December 2, 3, 2021 criminal trials, that are a matter

of record and described herein.

17.  All law enforcement bodies acted absent any Community Caretaker role

on January 24, 2020 or on March 9, 2020.

18.  The May 21, 2021 US Supreme Court ruling in Canigila v Storm has

5

reaffirmed the Police Community Caretaker exception is not to be used as an excuse to violate the Fourth and Fourteenth Amendment Rights.

19.    Further, on April 4, 2022 in <u>THOMPSON v. CLARK ET AL</u>, The US Supreme Court ruled a Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need not show that the criminal prosecution ended with some affirmative indication of innocence. However, Plaintiff's malicious prosecution claim is backed up by the *affirmative indication of innocence* by a December 3, 2021 'not guilty' jury trial verdict.

20.    Defendants' violations against Plaintiff defied their sworn oath to uphold Plaintiff's constitutional rights. And against this backdrop, Plaintiff files this action.

## PARTIES

21.    Plaintiff, Kathy Stratton is a law abiding citizen of the United States and a resident of the city of Kannapolis, County of Cabarrus, State of North Carolina.

22.    Defendant City of Kannapolis is a North Carolina municipal corporation, and is the employer of the individual police officers and is responsible for the policies,

6

practices and customs of the Kannapolis Police Department.

23. Defendant J. M. Livengood, was at all times relevant to this action employed as a police officer (supervisor) in the Kannapolis Police Department.

24. Defendant M. T. Hoehman, was at all times relevant to this action employed as a police officer in the Kannapolis Police Department.

25. Defendant McCheren was at all times relevant to this action employed as a police officer in the Kannapolis Police Department.

26. Defendant, J. Caudle was at all times relevant to this action employed as a police officer in the Kannapolis Police Department.

27. Each of the individual Defendants named above engaged in the conduct complained of under color of state law and in the course and scope of his or her employment.

28. Defendant, Mecklenburg County

29. Defendant, John Eller, MCDSS Director

30. Defendant, Tyrone Wade, Mecklenburg County Attorney, oversees the legal

7

operations of the County.

31. Defendant, Marty Prunty, MCDSS Guardianship Social Worker, employed by the Mecklenburg County Department of Social Services (MCDSS).

32. Defendant, City of Newburg

33. Defendant, Maryland Transportation Authority (MDTA) Police Officer Patrick Hart, was at all times relevant to this action employed as a police officer in the MDTA Police Department.

34. Officer (Corporal) William Harris, was at all times relevant to this action employed as a police officer in the MDTA Police Department.

35. MDTA Officer Daniel Harmon was at all times relevant to this action employed as a police officer in the MDTA Police Department.

36. MDTA Officer Paul Jerry was at all times relevant to this action employed as a police officer in the MDTA Police Department.

37. Each of the individual officers (Defendants) named above engaged in the conduct complained of under color of state law and in the course and scope of his or her employment.

38. Deputy Botforf (Formerly Collins), was at all times relevant to this action

8

was employed as a deputy for Charles County.

39.   Deputy Bagwell, was at all times relevant to this action employed as a deputy for Charles County.

40.   Deputy Lerch, was at all times relevant to this action employed as a deputy for Charles County.

41.   Officer Bourgeois, was at all times relevant to this action employed as a deputy for Charles County.

42.   Deputy Willis was at all times relevant to this action employed as a deputy for Charles County.

43.   Deputy Johnston was at all times relevant to this action employed as a deputy for Charles County.

44.   Deputy G. Fields was at all times relevant to this action employed as a deputy for Charles County.

45.   Each of the individual deputies Defendants named above engaged in the conduct complained of under color of state law and in the course and scope of his or her employment.

46.   Each of the individual defendants is sued in his or her official and individual

9

capacity.

## JURISDICTION AND VENUE

47.    This is a civil rights action in which the Plaintiff seeks relief for the violation

of rights secured by 42 U.S.C. 1983 and the First, Fourth, Fifth and Fourteenth

Amendments. The Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1332 because the parties to this action are diverse.

48.    This action is brought pursuant to 42 U.S.C. 1983 to redress the deprivation

under color of law of Plaintiff's rights as secured by the United States

Constitution.

49.    The court has jurisdiction over federal claims pursuant to 28 U.S.C.

1331 and state law claims pursuant to 28 U.S.C. 1367.

50.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Defendants

City of Kannapolis and Cabarrus County are located within this judicial district.

Additionally, the events giving rise to the claims asserted occurred and initiated

within this judicial district.

**10**

## FACTUAL BACKGROUND AND ALLEGATIONS

51.  On January 24, 2020 at approximately 1:20pm Kannapolis Defendant Officers in marked and unmarked vehicles and one (1) Charlotte Mecklenburg Police Department Officer (CMPD) in unmarked vehicle, unidentified county workers vehicles, Blazer Investigation, LLC agent surrounded Plaintiff's residence at 1601 Carlton Avenue, Kannapolis, NC. for approximately one (1) hour.

52.  Upon information and belief under the direction of Mecklenburg County Attorney Tyrone Wade, Blazer Investigations of Concord, NC was hired to surveil Plaintiff, Plaintiff's home and Plaintiff's special needs son, Spencer Stratton with the intent of a warrantless illegal unlawful removal of Spencer Stratton from Plaintiff's custody without legal process.

53.  At no time did law enforcement or any others knock on Plaintiff's door.

54.  Two of the KPD officers were stationed on foot on either side of Plaintiff's driveway.

55.  After approximately forty (40) minutes of Defendant surrounding Plaintiff's home, Plaintiff and her son exited their home, entered Plaintiff's vehicle to leave the residence.

11

56.  KPD supervisor Livengood entered the driveway and approached

Plaintiff's driver side of the vehicle.

57.  The two (2) officers stationed on foot moved to the center of the driveway

blocking Plaintiff's exit.

58.  Livengood introduced himself as the supervisor. Livengood looked in

Plaintiff's vehicle and interrogated Plaintiff about a missing person named Spencer

Stratton.

59.  Plaintiff stated there was no missing person and that the missing person alert

regarding Spencer Stratton had been canceled over six (6) months earlier on July

17, 2019 and was never re-issued.

60.  Plaintiff asked Livengood to see the paperwork that showed a reactivation of

Spencer Stratton being a missing person,

61.  Plaintiff further asked if there was an order, warrant or any legal paperwork

authorizing law enforcement to be on Plaintiff's property.

62.  Officer Livengood then stared at Plaintiff's son and on information and belief

Officer Livengood did not have paperwork documenting Plaintiff's son was a

12

missing person, Livengood did not have order, warrant, legal paperwork to be on

plaintiff's property, but was waiting on paperwork from a social worker.

63. Livengood stated he since he had seen Plaintiff's son for himself, he was

going to remove his name out of an alleged internal 'missing report'.

64. The two officers remained in the middle of Plaintiff's driveway as Livengood

continued to interrogate Plaintiff.

65. Plaintiff again requested Livengood leave the property and that his men stop

blocking the driveway.

66. Livengood continued to interrogate Plaintiff and requested to see Plaintiff's

driver's license.

67. Plaintiff did not consent to giving her license.

68. Plaintiff again asked Livengood to move his men from blocking her driveway

so she and her son could leave.

69. Livengood then nodded to his officer and then nodded toward the back of

Plaintiff's vehicle.

70. The KPD officer then looked at Plaintiff's license plate and nodded to

13

Livengood.

71. The CMPD Officer then took pictures of Plaintiff, Plaintiff's son and Plaintiff's vehicle.

72. The remaining KDP officer then moved from the center of the driveway for Plaintiff to exit, then Plaintiff and Plaintiff's son drove away.

73. KPD subsequently filed a police report dated 1/24/20 and entered disposition as "further investigation" instead of "located/resolved".

74. On information and belief at some later point (Discovery Determinate) KPD entered Plaintiff's car license plate tag into the NCIS.

75. This NCIS 'missing person' entry was made even though no missing person alert existed regarding Plaintiff's son, Spencer Stratton.

76. Pending Discovery, CMPD unredacted closed police report #20190416-1518-00 dated January 27, 2020, document details regarding CMPD and KPD presence on Plaintiff's property on January 24, 2020 and verify fraud NCIS entry.

77. Plaintiff's recorded and transcribed March 16, 2020 conversation with Internal Affairs Sergeant Georgian further documents these events.

78. KPD Police Report # 20-00739 and 20-00733 dated 1/24/20 **(Exhibit 1, KPD**

14

**Police Report**) has the entry of "further investigation" instead of "located, resolved and closed" and the entry of Plaintiff's name, car description, license plate number and vehicle identification on said reports.

79. On information and belief these KPD entries set up the fraud NCIS entry.

80. Discovery will verify if additional state actors/agencies were involved in the illegal NCIS entry of Plaintiff's vehicle which was the proximate cause of Plaintiff's false arrest and other constitutional rights violations against Plaintiff on March 9, 2020 in Maryland.

81. On or about February 2, 2020, because of the continued harassment by NC Defendants, Plaintiff and Plaintiff's son relocated to King George, VA, approximately 15 minutes outside of LaPlata, Maryland.

82. On March 9, 2020 as Plaintiff and Plaintiff's son was traveling north on Hwy 301 N into Maryland, MDTA officer Patrick Hart blue-lighted Plaintiff's vehicle.

83. Plaintiff immediately pulled to the right median, opened dash, and wallet to give officer the license, insurance, and registration.

84. Officer Hart waived off and declined checking Plaintiff's license information.

85. Officer Hart never asked to see Plaintiff's license during the entire stop.

86. Officer Hart immediately started looking in the back seat at Plaintiff's son,

15

and wanted to know who was the person in the back seat and was he Spencer Stratton, the one that was missing.

87.  Plaintiff then answered that the missing person report as to Spencer Stratton had been canceled several months earlier and that there was no missing person.

88.  Officer Hart then detained Plaintiff while he contacted the 'issuing agency' of the missing person report.

89.  On information and belief one of the NC agencies was MCDSS and one of the agent(s) was Marty Prunty, the author of the January 24, 2020 internal missing person report to KPD. Identification of others' involvement is pending Discovery.

90.  MCDSS agent(s), specifically Prunty involvement is based on multiple documents faxed to Charles County Defendant, Cupples after Plaintiff's arrest.

91.  These documents bear MCDSS, social worker's name, Marty Prunty.

92.  Officer Hart continued correspondence with MCDSS agent(s) when another MDTA officer (Corporal Harris) arrived on the scene.

93.  Plaintiff then exited the vehicle, approached both MDTA officers Hart and Harris , displayed to MDTA officers Hart and Harris the live North Carolina DPS website with a July 17, 2019 entry canceling the Silver Alert, missing person alert regarding Spencer Stratton. (**Exhibit 2, NC DPS Cancellation**). This scene is documented by (**MDTA Body Cam Video @ Marker 15: 27:00**)

16

94.  Both officers looked at the display, and then returned Plaintiff's cell phone.

95.  Plaintiff asked MDTA officers why Plaintiff and Plaintiff's son were still being detained since there was no legitimate missing per the NC DPS information.

96.  Corporal Harris stated: " I am not interested in that information, and I am only taking my information from the NC agency issuing this report

97.  Plaintiff was then ordered to return to Plaintiff's vehicle.

98.  After approximately one (1) hour, Corporal Hart was still corresponding with the thus far unidentified NC agency when Officer Hart and one (1) other MDTA officer approached each side of Plaintiff's vehicle.

99.  Both officers surveyed the inside of Plaintiff's vehicle, observed Plaintiff's Son, and stayed posted at Plaintiff's vehicle for an extended period of time.

100.  In the interim, two (2) more MDTA officers arrived on the scene.

101.  Officer Hart began questioning Plaintiff about Plaintiff's travel plans.

102.  Plaintiff asserted rights protected under the Fifth Amendment rights.

103.  Plaintiff and son had been detained for approximately 2 hours.

104.  Corporal Harris continued communications with NC Agency.

105.  Four (4) more law enforcement cars identified as Charles County arrived.

106.  Plaintiff was instructed to exit the vehicle,

107.  Plaintiff asked to remain in the vehicle as a comfort to Plaintiff's son.

17

108. Officer refused, and stated I needed to be restrained by the roadside.

109. Officer Hart then 'handcuffed' Plaintiff with plastic zip tie restraints

110.   For approximately thirty (30) minutes, Plaintiff conversed with the four (4) MDTA officers about Plaintiff's relationship to and legal custody of Plaintiff's son, and the dispute with MCDSS.

111. Plaintiff then stated to Officer Hart that the long detainment was not good for my special needs son and I could see that he was getting anxious, and that Plaintiff's son needed attention.

112. Further, Plaintiff asked Officer Hart why the long detainment.

113. Officer Hart replied that Plaintiff did not identify during the stop.

114. Plaintiff then stated to Officer Hart that he never asked for a license.

115. Officer Hart responded, "if I had asked for your driver's license, would you have given it to me?" Documented @ Time Stamped (**Marker 15: 54:00 MDTA Body Cam Video)**

116. Plaintiff replied yes, of course, I had my information ready to show you."

117. Corporal Harris then reappeared from communications with MCDSS.

118. Corporal Harris started asking questions about Plaintiff's vehicle.

119. Plaintiff replied that officers already looked up tag registration information and further objected to continued rights violations and asserted right to decline

18

further interrogation and demanded to be released to attend to Plaintiff's son.

120. Corporal Harris refused to release Plaintiff and then returned to his squad car and conversed on the phone several more minutes.

121. Plaintiff was then surrounded by six (6) armed Charles County Deputies, and four (4) armed MDTA officers.

122. The deputies began questioning Plaintiff on the relationship between Plaintiff and the 'young man' in Plaintiff's vehicle and his disposition.

123. Plaintiff answered that he was Plaintiff's son,

that the NC MCDSS agency were the ones trying to seize my son without legal authority, that there was no missing person and that report was canceled, that all the NC authorities knew it was canceled, further that Plaintiff had displayed the missing person cancellation information to the MDTA officers, and that the cancellations information was displayed in real-time at the NC DPS website.

124. Corporal Harris then reappeared and ordered Officer Hart to handcuff Plaintiff with metal cuffs, and place Plaintiff under arrest, and Plaintiff asked Corporal Harris the reason for the arrest.

125. Corporal Harris stated " I need to take you to the station for identification".

126. Plaintiff responded that I had identified and been identified.

19

127. Corporal Harris declined any other further explanation.

128. Charles County Deputies: Botforf (formerly) Collins, and Bagwell then conducted an illegal search on Plaintiff.

129. Plaintiff was then placed in Officer's Hart's squad car.

130. Botfort (formerly) Collins, and Bagwell forcibly unlocked and entered Plaintiff's locked vehicle, seized Plaintiff's keys and removed Plaintiff's son.

131. Deputies Botforf and Bagwell walked Plaintiff's son past Plaintiff blocking him as Plaintiff's son attempted to get in the squad car with Plaintiff.

132. Plaintiff then requested permission to call a caretaker located 15 minutes away to take custody of Plaintiff's son until Plaintiff could bond out of jail.

133. MDTA officers called a Charles County social worker to take the contact information for Plaintiff's specified caretaker.

134. MDTA officer transported Plaintiff's son back to the Nice Bridge police station where Plaintiff's specified caretaker had arrived to take custody of Plaintiff's son.

135. MDTA officers refused to release Plaintiff's son to Plaintiff's caretaker.

136. MDTA instead transported Plaintiff's son to Charles County hospital for a pick-up by Charles County Department of Social Services, (CCDSS) Child

20

Protective Services. Supervisor, Jane Cupples.

137. The MDTA March 9, 2020 time-stamped list of 'MDTA EVENTS'
document the sequence of events listed above.

138. CCDSS employees in turn held Plaintiff's son for MCDSS pick-up. Plaintiff
was restrained and jailed overnight before being released the next morning on
March 10, 2020 at approximately 3:00am.

139. Plaintiff's arrived at Charles County Department of Social Services upon
their opening at approximately 8:30am on March 10, 2020.

140. Upon arrival Plaintiff requested the whereabouts of Spencer Stratton.

141. Plaintiff was directed to speak with Kelly Beswick, CCDSS
Ms Beswick was expecting Plaintiff and ushered Plaintiff into her office.
Plaintiff stated to Ms Beswick the relationship to Spencer Stratton was mother and
legal guardian. Further, that Plaintiff was there to obtain the whereabouts of
Spencer and to pick him up and take him back home.

142. Ms. Beswick stated: She didn't exactly know where Plaintiff's son was, that
MCDSS had already came to Maryland and picked him up, and that they had
already left with him.

143. On information and belief Ms. Beswick did know the location of Plaintiff's

21

son. MDTA <u>EVENTS</u> lists and discovery documents indicate Ms. Beswick and Ms Cupples were working with MCDSS to seize and hide Plaintiff's son from Plaintiff

144. Plaintiff asked why Plaintiff's son was released to MCDSS, and how he could be picked-up and gone that quickly overnight.

145. Ms Beswick stated she received a faxed MCDSS guardianship letter from Charles County Sheriff's office after Plaintiff's arrest on March 9, 2020.

146. The guardianship letter alleged MCDSS to be Plaintiff's guardian.

147. Discovery verifies this same letter referenced was displayed to Ms. Talley, CCDSS Adult Services and faxed to CCDSS worker, Mary Cupples by MCDSS social worker, Marty Prunty after Plaintiff's March 9, 2020 arrest. Also it is the same guardianship letter Maryland State's Attorney Office retroactively questioned, and requested a certified copy of letter three (3) weeks after releasing Plaintiff's son to MCDSS. **(Exhibit 3, Maryland States Attorney Letter)**

148. MCDSS never produced a certified copy of the letter but instead resigned the 'alleged guardianship' nearly Four (4) months later.

149. Plaintiff entered Plaintiff's son entire certified court files into the federal record in a writ of habeas <u>case# 21-6184</u> filed in son's behalf.

150. Those certified files verify the alleged guardianship letter faxed by

22

MCDSS agent Marty Prunty to Maryland Defendants doesn't exist and that the MCDSS faxed alleged guardianship letter was custom made by MCDSS for the Maryland Defendants to use to violate Plaintiff's rights.

151. That pending resubmission of habeas case is intertwined with Plaintiff's instant cause of action against named Defendants as it is pertinent to Defendants' violation of Plaintiff's First Amendment constitutional right of familial association and Defendants negligent disregard and interference with Plaintiff's rights to care, custody and control of Plaintiff's son, and violation of the Fourteenth Amendment Due Process and Equal Protection clause.

152. Further, the March 16, 2020 transcribed recorded statement from CMPD Internal Affairs Sergeant Georgian **(Exhibit 4, 3/16/20 CMPD Transcript)** confirms CMPD rejected MCDSS agent, Marty Prunty attempt to solicit CMPD to execute a 'guardianship orderr' that CMPD determined to be "not valid" months before the Maryland Defendants accepted Prunty's fraudulent guardianship letter.

153. MCDSS fraud letter was used in Maryland on March 9, 2020 to further violate Plaintiff constitutional rights.

154. Nearly two (2) years of trials in LaPlata, Maryland, Charles County followed Plaintiff's March 9, 2020 arrest.

23

155.   Sworn testimony was taken and MDTA Body Cam evidence was entered in STATE OF MARYLAND VS KATHY STRATTON on May 5, 2021 District Court trial case number: D-042-CR-20-000672 and in December 2, 3, 2021 Charles County Circuit Court Maryland jury trial in case number: C08CR21-220 .

156.   **MDTA Body cam** evidence confirms MDTA Officer Hart never asked Plaintiff for a driver's license.

156.   MDTA fairy tale narrative probable cause document sworn to by Officer Hart alleges Plaintiff refused to show her license as the reason for Plaintiff's arrest.

157.   The jury trial not-guilty verdict in Plaintiff's favor on December 3, 2021, the evidence presented and the outcome of Plaintiff's jury trial is supporting evidence of the underlying sinister scheme alleged in the instant Complaint.

### Policy and Practice Allegations

158.   The written and defacto policies, practices and customs of the Defendants City of Kannapolis and its police department contributed to and were a moving force behind the constitutional and civil Rights violations of Plaintiff.

159.   The written defacto policies, practices and customs of the Defendants City of Newburg and its police department contributed to and were a moving force behind

24

the constitutional and civil rights violations of Plaintiff. Defendants' blatant lawless

actions against Plaintiff demonstrate lack of regard for constitutional and civil

rights they have sworn to uphold. Defendants' premeditated actions against

Plaintiff demonstrate an accustomed routine of perpetrating such violations.

160. Defendants singled out Plaintiff by repeatedly inflicting emotional distress

under threat of bodily harm using a fraudulent police report on January 24, 2020,

and later the fraudulent entry of Plaintiff's tag into the NCIS, causing the March 9,

2020 violations against Plaintiff.

161. Plaintiff warned Defendants' superiors/ officials by Certified mail about

KPD violations. The KPD officials did not respond to or attempt to alleviate

violations against Plaintiff. City officials and their policymakers displayed

deliberate indifference to the violations perpetrated by their officers against

citizens in their jurisdiction. City officials tolerated, permitted and/or maintained

customs that permit officer Defendants to engage in unlawful and unconstitutional

actions alleged in this complaint.

162. Plaintiff warned MDTA and Charles County Deputies on the scene of civil

and constitutional rights violations preceding Plaintiff's warrantless arrest on

/

25

March 9, 2020. Plaintiff informed Defendants of the NC DPS live website to reference correct missing person information and that showed Plaintiff's son missing person status was canceled.

163. Defendants' displayed deliberate indifference to the facts,

164. On information and belief, none of the Defendants KPD, MDTA officers or Charles County Deputies received discipline for their violations alleged herein.

165. Defendants City of Kannapolis, City of Newburg, has waived its governmental immunity through the purchase of liability insurance that indemnifies it from liability for the acts alleged in this complaint.

## Damages Allegations

166. Defendants collective violations of Plaintiff's Fourth Amendment protected right against unlawful search and seizures lead to the Plaintiff's threat of bodily harm, separation from Plaintiff's son, deprived Plaintiff of the opportunity to access the courts in a timely manner to direct the care, control and custody of Plaintiff's son, and denied Plaintiff of the First Amendment right to familial association. Defendants' violation of the Plaintiff's First, Fourth, and Fourteenth Amendment rights is the proximate cause of continuing damages for loss of care,

26

control, and custody of Plaintiff's son.

167. The conduct of the individual defendants was willful, malicious and in reckless disregard for Plaintiff's constitutional and civil rights thus justifying punitive damages against the individual defendants. Plaintiff has personally suffered extreme mental anguish, and anxiety, compounded by the continuing intense sadness, anxiety concerning the health, welfare, condition and whereabouts of Plaintiff's seized son.

### CLAIM I
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(First Amendment- Denial of Familia Association)**
**Against Defendants: Mecklenburg County, MCDSS Director,Tyrone Wade,**
**Marty Prunty**

168. Plaintiff incorporates herein all the prior allegations.

169. Defendants, MCDSS Director, John Eller is in charge of the operations and an official policy maker for MCDSS. The Director was at the times relevant to Plaintiff's allegation acting in the capacity of MCDSS Director. The previous MCDSS Director, Peggy Eagan and the interim director had specifically been warned and notified by certified mail about County Attorney, Tyrone Wade and social worker, Marty Prunty's violating Plaintiff's First Amendment rights including using fraud documents against Plaintiff.

27

At all times relevant to this complaint, the official in charge of county,

Director (interim) displayed deliberate indifference to Plaintiff allegations and did

not rectify Defendant Prunty's First Amendment violation against Plaintiff.

171. Tyrone Wade, Mecklenburg County Attorney, a former MCDSS attorney

oversees all the legal operations of the County and has been innately involved with

Plaintiff's son's previous MCDSS seizure. Wade specifically represented MCDSS

CPS social worker supervisor in initiating the non-jurisdictional 2002 guardianship

petition after Plaintiff's son, Spencer had aged out of MCDSS, cps jurisdiction.

Upon information and belief Wade as the chief legal authority over the county,

participated in and spearheaded the activities performed and signed off on MCDSS

employees' violations against Plaintiff in Kannapolis on January 24, 2020,

subsequent NCIS entry of Plaintiff's tag, and in violations against Plaintiff in

Maryland on March 9, 2020. The extent of Wade's participation to be determined

upon Discovery of Wade's communication with MCDSS employees, KPD and/or

its    agents    and    Maryland    Defendants    and/or    its    agents.

172. Defendant Marty Prunty is a MCDSS social worker employee, and at all

times relevant to this complaint caused the following First Amendment violations

against Plaintiff: Prunty caused to be issued a fraudulent missing person report, on

28

January 24, 2020 regarding Plaintiff's son Spencer Stratton. Prunty and KPD knew this missing person, Silver Alert was cancelled six (6) months earlier. Prunty's fraudulent report was the moving force behind KPD violations against Plaintiff rights on January 24, 2020 described in Claims below. And the proximate cause of violations against Plaintiff in Maryland on March 09, 2020 described in Claims below. Prunty presented manufactured counterfeit 'guardianship letter' to Charles County Defendants on March 9, 2020, further causing Plaintiff's denial of familial association. Prunty's document had been rejected months earlier as an 'invalid order' by CMPD, Sergeant Georgian in attempted solicitation of CMPD to execute a seizure on Plaintiff's son just months before the March 9, 2020 seizure using Prunty's counterfeit document. Three (3) weeks after MCDSS seized Plaintiff's son out of Plaintiff's custody using Prunty's counterfeit document, in Maryland, The Maryland State's Attorney's Office March 31, 2020 letter retroactively questioned the 'guardianship letter' Prunty used to seize Plaintiff's son, and requested a certified copy of the 'guardianship letter' in question. Defendants never produced a certified copy and have never produced a valid guardianship letter or any other document authorizing MCDSS custody.

173. Prunty and Wade intentionally, knowingly, maliciously, and wantonly

29

denied Plaintiff's right to care, custody and control of Plaintiff's son without legal process using actual and constructive fraud documents to do so. Defendants intentionally, knowingly, maliciously and wantonly denied Plaintiff's fundamental right to familial association.

174. Mecklenburg county is a North Carolina municipal corporation and final policy maker for MCDSS, and responsible for the activities of MCDSS employees

175. Defendants actions described above harmed Plaintiff. Plaintiff suffered damages including but not limited to mental anguish, anxiety, pain and suffering from Defendants actions described above. Defendants unconstitutional actions are the proximate cause of the violations Plaintiff suffered from KPD, MDTA, and Charles County Defendants.

## CLAIM II
### VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourteenth Amendment-Equal Protection Clause)
### (Against Defendants Mecklenburg County, MCDSS Director, Marty Prunty, Tyrone Wade)

176. Plaintiff incorporates herein all the prior allegations.

177. The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The United States Supreme Court has held

30

that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985).

**178.** Defendants have intentionally and purposefully singled out Plaintiff for discriminatory treatment. Defendants' continual pursuit of Plaintiff is exhibited by hiring a private investigation agency, solicitation of police agencies, Plaintiff's neighbors, to surveil Plaintiff and Plaintiff's home without an order, warrant or any other legal basis to do so.

179. Defendants repeated acts of presenting fraud documents, unauthorized judgments and naming Plaintiff, causing Plaintiff's residence listing on fraud police reports as "unauthorized custodian" (without proof of MCDSS custody) to justify said surveillance of Plaintiff are exhibits of unequal treatment and discrimination against Plaintiff. Defendants' discriminatory treatment against Plaintiff has caused Plaintiff harm.

180. At all times relevant to this Complaint Plaintiff has been under sustained harassment, threat of bodily harm from armed police officers investigating various fraud reports made or caused to be made by MCDSS agent(s) evidenced by the KPD Police Reports displaying Plaintiff's name and address.

31

181.  Further, Plaintiff's January 24, 2020 and March 9, 2020 Law enforcement

encounters were a direct result of MCDSS agent(s), Defendants Wade and Prunty

fraud            actions            directed            at            Plaintiff.

182.    Defendants' discriminatory actions are the proximate cause of the

deprivation of Plaintiff's rights and have caused Plaintiff harm including but not

loss of full time employment, loss of more gainful employability, constant anxiety,

mental anguish for which Plaintiff seeks damages.

## CLAIM III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C 1983 – ACTUAL AND CONSTRUCTIVE FRAUD (Against Tyrone Wade, Marty Prunty, Mecklenburg County, MCDSS Director), Livengood, City of Kannapolis, Charles County, City of Newburg, Officers: Hart, Harris, Harmon, Jerry

183.  Plaintiff incorporates herein all the prior allegations.

184.    The MCDSS verbally purported to have legal custody of Plaintiff's son to

the agencies that attempted to and eventually participated in MCDSS seizure of

Plaintiff's son. However, MCDSS never produced legal documentation for that

alleged custody. Instead MCDSS produced fraud, counterfeit legal fiction papers

that was used to take Plaintiff' son out of Plaintiff's care and custody.

185.  Those documents were used to defraud Plaintiff of Plaintiff's right under the

First Amendment to the United States Constitution.

186.  The law compels MCDSS and its agents to always act in the best interest of

32

persons in their custody and under their control.

187. The fiduciary Oath (AOC-G101) form that all guardians pledge states in part "....I affirm that I will support and maintain the Constitution and laws of the United States...and I will faithfully discharge the duties of my office..." . That fiduciary OATH to uphold the laws of the United States Constitution is not a private contract.

188. Persons ruled incompetent are not free to contract, but are owed a duty of care by the guardian. That fiduciary OATH is a promise by a public government agency or other guardians of candor to the court, and most certainly to the persons who have fundamental interest in the person's care, that the duty of care is being rendered.

189. Plaintiff is and was at all times relevant to this Complaint Spencer Stratton's parent, with full parental rights intact.

190. Wade and Prunty were acting as agents of MCDSS in the capacity of performing their duties when Prunty and Wade caused to be issued a fraudulent missing person report regarding Plaintiff's son on January 24, 2020, Prunty and Wade was acting as agents of MCDSS in the performance their duties on March 09, 2020 when Prunty and Wade caused to be transmitted a counterfeit

33

manufactured fraud document purporting MCDSS to be guardian of Plaintiff's son.

191. At least two (2) independent law enforcement bodies have questioned the legality of documents by MCDSS. CMPD rejected MCDSS purported order aimed at seizing Plaintiff's son as being "invalid", as referenced in Exhibit 4. questioned the validity of the MCDSS document used to defraud Plaintiff of rights and requested a certified copy, as referenced in Exhibit 3,

which MCDSS never produced, but instead resigned their alleged guardianship.

192. Defendant Wade is the attorney for Mecklenburg County and at all times relevant to this Complaint acted in his official capacity.

193. Defendant John Eller Is the Director of MCDSS and is a policymaker. The predecessors as Directors were agents or employees of Mecklenburg County at all relevant times of this complaint and were noticed of the fraud activities of Wade and Prunty.

193. Mecklenburg County is the final policymaker for MCDSS and as such is responsible for the activities of the MCDSS. Defendants' activities shows policy, pattern, practice and a custom to acceptance of violating constitutional rights.

194. Defendants used fraud documents to rob Plaintiff of the fundamental right to the care and custody of Plaintiff's son. Further, denied Plaintiff the First

34

Amendment right to Familia Association.

195.    Defendants use of fraud documents caused Plaintiff continuing mental anguish, intense anxiety, pain, suffering associated with the concern for the condition, safety, and security of Plaintiff's son. Defendants conduct is the proximate cause of said pain and suffering. Plaintiff was harmed and seeks compensatory and punitive damages.

## CLAIM 1V

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C 1983 – ACTUAL AND  CONSTRUCTIVE FRAUD
### (Against KPD agent(s) Livengood, City of Kannapolis)

196.    Plaintiff incorporates herein all the prior allegations.

197.    Defendants on January 24, 2020 knowingly filed and/or caused to be filed a fraudulent missing person police report alleging Plaintiff's son was missing.

198.    Subsequently, at least sometime prior (Discovery Determinate) to Plaintiff's March 9, 2020 Maryland MDTA stop, false arrest, KPD agent(s) possibly in conjunction with other agencies (Discovery Determinate) participated in fraudulent entry of Plaintiff's license plate tag into the NCIS.

199.    Both KPD fraud actions listed above were used to defraud Plaintiff of rights under the First Amendment to the United States, and right to the care, custody and

35

control of Plaintiff's son without legal process.

200.    KPD officers are sworn to and have a duty to citizens uphold the constitutional rights of its citizens. City of Kannapolis is the policy maker for KPD. KPD blatant constitutional violations and KPD committing fraud in order to do said violations exhibited that the policy, customs and practices of constitutional violations are generally accepted. That duty to uphold constitutional rights was breached by KPD and KPD fraud and constitutional violations was the proximate cause of violations of Plaintiff's First, Fourth, Fifth and Fourteenth Amendments Rights violations on March 9, 2020. KPD fraud denied Plaintiff's constitutional right to the care, custody, control of Plaintiff's.

201.   KPD fraud is the proximate cause of the violations against Plaintiff listed above and the proximate cause of Plaintiff's mental anguish, anxiety, pain and suffering. Plaintiff was harmed and seeks compensatory and punitive damages

## CLAIM V
### (VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C.  1983 – Monell Liability)
### Municipal Liability- Policy to Seize, Falsely Detain, Imprison for exercise of Fourth, Fifth and Fourteenth Amendment Rights)
### (Against City of Kannapolis)

202.  Plaintiff incorporates herein all the prior allegations.

203.   A municipality is liable under 42 U.S.C. 1983 if the acts that violated a person's rights are attributable to its own policies, practices, and customs,

36

including the actions of a final policy maker.

204. At all times relevant to this complaint, Defendant City of Kannapolis acted with deliberate indifference to Plaintiff's constitutional rights by maintaining policies, practices, and customs that condoned and fostered Defendant officers' conduct. This custom and policy that allows or permits officers to unlawfully detain, and falsely imprison under threat of bodily harm was the standard operating procedure for Defendant officers and the City of Kannapolis.

205. The policy was evidenced by Defendant Livengood, as supervisor when he unlawfully detained, falsely imprisoned Plaintiff on Plaintiff's property without a warrant, and instructed officers under his command to commit violations against Plaintiff. At Defendant Livengood's direction and with his participation, Defendants Livengood, McCrechen, Caudle, and Hoehman detained, falsely imprisoned Plaintiff on her own personal property under threat of bodily harm without a warrant, without probable cause or reasonable suspicion that Plaintiff had engaged in any criminal activity

206. All KPD violations against Plaintiff were conducted by using a fraudulent 1/24/20 police report and a fraudulent NCIS entry.

207. It unknown by Plaintiff at the time of the KPD violations that the fraudulent

37

police report had been filed, or that the fraudulent NCIS entry was made.

208. As a result of this policy and custom as reason to seize, detain, and imprison while on own personal property exercising said rights, and committing no crime, Plaintiff was harmed by presence of armed officers and violations cited above. Damages include but not limited to intense fear, anxiety and mental anguish, pain and suffering for the safety of Plaintiff and for Plaintiff's son. Plaintiff now seeks compensatory and punitive damages.

## CLAIM VI
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Municipal Liability-Failure to Train and Supervise)
### (Against City of Kannapolis)

209. Plaintiff incorporates herein all the prior allegations.

210. A municipality is liable under 42 U.S.C 1983 if the alleged violations are attributable to its own policies, practices, and customs, including the actions of a final policy maker.

211. At all times relevant to this complaint, Defendant City of Kannapolis acted with deliberate indifference to Plaintiff's constitutional rights by maintaining policies, practices, and customs that condoned and fostered Defendant officers' conduct. In the alternative and at all times relevant to this complaint, Defendant City of Kannapolis, did not in fact have such policies in place, but failed to properly train Defendant officers, including a supervising police officer, thus

38

demonstrating deliberate indifference to Plaintiff's rights.

212. Defendant City of Kannapolis failed to: a) adequately supervise and train its officers and agents, specifically Defendant Livengood, a supervisor, and including Defendants Hoehman, Caudle, and McCrechen, therefore failing to adequately discourage further constitutional violations on the part of its officers.

213. As stated and being pled in this alternative, the fundamental lack of knowledge of such basic First, Fourth and Fourteenth Amendment rights by a supervisor such as Livengood, could only be as a result of City of Kannapolis failure to adequately train Defendant Officers before putting them in the position in which they were placed by Defendant City. This is especially true with Plaintiff's past complaints regarding KPD actions to the City of Kannapolis officials. Defendant City of Kannapolis failed to properly train its police officers on the proper procedure for initiating an investigation of an alleged missing person report, the legal protocol of detaining, imprisoning citizens without a Probable Cause warrant or absent any legal process.

214. Defendant City of Kannapolis failure to adequately supervise and train its police officers on the proper procedures on investigation caused Defendant Officers to violate Plaintiff's Constitutional rights.

39

215. As a result of Defendant City of Kannapolis' failure to adequately train or correct their policy on unlawful detainment, imprisonment for the exercise of protected rights, Plaintiff was harmed and seeks compensatory and punitive damages.

## CLAIM VII
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Municipal Liability-Failure to Train and Supervise)
### (Against City of Newburg)

216. Plaintiff incorporates herein all the prior allegations.

217. A municipality is liable under 42 U.S.C 1983 if the alleged violations are attributable to its own policies, practices, and customs, including the actions of a final policy maker.

218. At all times relevant to this complaint, Defendant City of Newburg acted with deliberate indifference to Plaintiff's constitutional rights by maintaining policies, practices, and customs that condoned and fostered Defendant officers' conduct.

219. In the alternative and at all times relevant to this complaint, Defendant City of Newburg, did not in fact have such policies in place, but failed to properly train Defendant officers, including a supervising police officer, such as Corporal Harris thus demonstrating deliberate indifference to Plaintiff's rights.

Defendant City of Newburg failed to:

40

a)  adequately supervise and train its officers and agents,

b) specifically Defendant Harris, a corporal, and including Defendants Hart, Harmon, and Jerry,
c) therefore failing to adequately discourage further constitutional violations on the part of its officers

220.  As stated and being pled in this alternative, the fundamental lack of knowledge of such basic First, Fourth and Fourteenth Amendment rights by a corporal such as Harris, could only be as a result of City of Newburg failure to adequately train Defendant Officers before putting them in the position in which they were placed by Defendant City of Newburg.

221.  Defendant City of Newburg failed to properly train its police officers on the proper procedure for initiating an investigation of an alleged missing person report, the legal protocol of detaining, imprisoning, placing citizens under arrest without a Probable Cause warrant or absent any legal process.

222.  Further, the boldness of a corporal to instruct officers to conduct a known false arrest, and then be complicit to a falsified probable cause document indicates such conduct is custom and policy and generally acceptable.

223.  Defendant City of Newburg failure to adequately supervise and train its police officers on the proper procedures on investigations and arrest caused Defendant Officers to violate Plaintiff's Constitutional rights.

41

224. As a result of Defendant City of Newburg's' failure to adequately train or correct their policy on unlawful detainment, imprisonment, unlawful arrest, falsifying probable cause for the exercise of protected rights, Plaintiff was harmed and seeks compensatory and punitive damages.

## CLAIM VIII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Supervisory Individual Liability)
### (Against Defendant Livengood)

225. Plaintiff incorporates herein all prior factual allegations.

226. A supervisor is individually liable under 42 U.S.C 1983 if the supervisor implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate or directly participated.

227. At all times relevant to this complaint, Defendant Livengood was a supervisor acting under the color of law in his actions and omissions and at least implicitly approved, authorized or acquiesced in the unconstitutional conduct exhibited by his subordinate defendants named herein.

228. All of the individually named Defendants were acting under the direct supervision of Defendant Livengood.

229. Defendant Livengood established policies for his subordinates to follow which permitted Defendant Livengood and Defendant Officers to carry out the

42

constitutional violation described herein.

230.   At all times relevant to this complaint, Defendant Livengood was responsible for the supervision, discipline, and control of Defendants Officers, yet he participated in and approved, authorized or acquiesced his subordinates' misconduct.

232.   As described herein, Defendant Livengood had knowledge that Plaintiff was exercising Plaintiff's First, Fourth, First and Fourteenth Amendment rights, yet Livengood and Defendant Officers surrounded Plaintiff's property causing Plaintiff's threat of bodily harm, detained Plaintiff for an extended period of time without Probable Cause, physically blocked Plaintiff from leaving Plaintiff's own property, and even instructed Defendant officer to confirm Plaintiff's license plate without legal cause to do so in anticipation to further violate Plaintiff Rights.

233.   As a result of Defendant Livengood's actions and inactions, he exhibited deliberate indifference to Plaintiff's constitutional rights in violation of 42 U.S.C. 1983 and their rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

234.   As a proximate result of the illegal and unconstitutional acts of the

43

Defendant, Plaintiff was harmed and suffered damages for mental, emotional injury and pain, mental anguish, anxiety from fear of bodily harm presented from Livengood authority over armed officers' actions, fear and anxiety from anticipated actions against Plaintiff's son, humiliation, and embarrassment.

**CLAIM IX**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.S 1983**
**(First, Fourth, Fifth, Fourteenth Amendment-Retaliation for Exercise of Rights)**
**(Against Defendants Livengood, Hoehman, Caudle, McCrechen, City of Kannapolis, Wade, Prunty)**

235. Plaintiff incorporates herein all the prior allegations.

236. Plaintiff exercised constitutionally protected rights on January 24, 2020 when Defendants surrounded Plaintiff's residence, blocked Plaintiff's exit and attempted to seize Plaintiff's son. .Plaintiff was finally able to exit Plaintiff's property with Plaintiff's son away from Defendants. Defendants were not successful in their attempts to force Plaintiff to waive Plaintiff's constitutionally protected rights.

237. Defendant Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently retaliated against Plaintiff exercise of rights by falsifying police report, illegally entered Plaintiff's tag into the NCIS.

238. Defendants Prunty, Wade intentionally, knowingly, maliciously, recklessly

44

unreasonably and/or gross negligently retaliated against Plaintiff exercise of rights by first issuing a fraudulent police report naming Plaintiff's home address to be travailed by law enforcement, Prunty, Wade further transmitted or caused to be transmitted fraudulent alleged guardianship letter to Maryland Defendants in retaliation for Plaintiff's exercise of rights against fraud attempts on 1/24/20

239. Defendants actions was based on Defendants' knowingly, deliberate, and reckless disregard for the truth. The retaliation was motivated at least in part by the Plaintiff's exercise of protected rights in defiance of the Defendants' previous fraud attempts to seize Plaintiff's son on January 24, 2020.

240. There was a causal connection between Plaintiff's constitutionally protected rights and the adverse retaliatory actions taken by the Defendants against Plaintiff.

241. Defendants' conduct of retaliatory actions against Plaintiff cited above deprived Plaintiff of liberty without Plaintiff's consent, probable cause, legal justification, just cause, or any other legally valid reason

242. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffers damages.

## CLAIM X
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (First Amendment-Denial of familial Association)
**(Against Charles County, CC Deputies: G. Fields, Lerch, Johnston, Botforf, Bagwell, Bourgeois, CCDSS employees: Beswick, Tally, Cupples)**

45

243. Plaintiff incorporates herein all the prior allegations.

244. Plaintiff was exercising rights to freedom of association, particularly familial association in LaPlata, MD on March 9, 2020. when Defendants intentionally, knowingly, maliciously, recklessly, unreasonably and /or gross negligently separated Plaintiff from Plaintiff's son by illegally seizure, detainment under threat of bodily harm using the guise of an internal missing person report.

245. Defendants then intentionally, knowingly maliciously, recklessly, unreasonably, and negligently did separate Plaintiff from son and prevented Plaintiff's access to Plaintiff's son, without any legal authority or basis.

246. Defendants actions were based on Defendants knowing, deliberate and reckless disregard for the truth. All Defendants had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Plaintiff should have been separated from and then prevented from accessing Plaintiff's son.

247. Defendants prevented Plaintiff's exercise of First Amendment rights, and right to the custody and control of Plaintiff's son.

248. Defendants had been informed of the official government agency (NC DPS) to check the legitimacy of Plaintiff's son missing person status.

249. Defendants did not verify the legitimacy of MDSS faxed documentation that

46

was not certified documents. Defendants had a duty to verify the legitimacy of documents used to deny Plaintiff's constitutional rights, before denying those constitutional rights.

250. Charles County is the policy maker for the county, CCDSS and deputies. The widespread blanket acceptance of MCDSS documents without verification exhibits a pattern and practice and custom of acceptance of this negligent conduct by Charles County. Defendants were at all times relevant to this complaint acting in their official capacity.

251. As a proximate result of Defendants actions, Plaintiff suffered damages of continuous mental anguish, constant anxiety over the concern for the safety, welfare of Plaintiff's son and seeks damages.

## CLAIM XI
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
#### (Fourth, Fifth, Fourteenth Amendment, - Unlawful Arrest)(Against Defendants Officers Hart, Harris, Harmon, Jerry, and City of Newburg, KPD Officers: Livengood, Harmon, Caudle, Hoehman, City of Kannapolis)

252. Plaintiff incorporates herein all the prior allegations.

253. The Fourth Amendment requires police officers to possess sufficient probable cause before placing a criminal suspect under arrest.

47

254. At all times relevant, Plaintiff had a clearly established right to liberty, including the right to personal safety and bodily integrity as well as protection from unlawful seizure pursuant to the Fourth Amendment to the United States Constitution.

255. At all times relevant, as police officers acting under color of law, Defendant Officers were required to obey the laws of the United States.

256. Defendant Officers intentionally, knowingly, maliciously, recklessly unreasonably and /or gross negligently detained, handcuffed, and /or arrested Plaintiff without a warrant or any lawful basis.

257. Defendants knew of Plaintiff's Fifth Amendment Right against compelled testimony. Defendants knew of Plaintiff's Fourteenth Amendment right to due process and equal protection.

258. Plaintiff was handcuffed and detained by Defendant for allegedly 'hindering/obstruction'.

259. Plaintiff's arrest was based on Defendant Officers' knowing, deliberate, and reckless disregard for the truth

260. Defendant Officers had no facts or legal basis upon which to base the charge,

48

261. Defendant Officers knew Plaintiff did nothing to obstruct or hinder their investigation.

262. Defendant Officers knew Plaintiff actually assisted their investigation by displaying official proof that the missing person alert regarding Plaintiff's son was cancelled.

263. MDTA body camera verifies Plaintiff verbally identified to Defendant Officers, that Defendant Officers ran Plaintiff's license tag to confirm Plaintiff's stated identity.

264. Defendant Officers intentionally falsely arrested Plaintiff to perfect a scheme to seize Plaintiff's son in complicity with NC MCDSS

265. Defendant Officers willfully, wantonly with forethought and malice confined Plaintiff to police car for a substantial amount of time needed to seize Plaintiff's son away from the arrest scene and consummate the seizure plan with MCDSS.

266. Defendants then swore out fraudulent Probable Cause Document (Initial Report) for Plaintiff's arrest and had Plaintiff jailed depriving Plaintiff of liberty without Plaintiff's consent, probable cause, legal justification, just cause or any other legally valid reason.

267. Further, Defendants actions willfully with forethought and malice deprived Plaintiff of the right to access Plaintiff's son and access to the court.

49

268. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of United States of America and in violation of 42 U.S.C. 1983.

269. The acts complained of were carried out by the individual Defendants in their capacities as police officers, pursuant to the direction of Corporal Harris and the customs, usages, practice, procedures, and the rules of the City of Newburg. Defendant Officers collectively and individually while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden under the Constitution of the United States.

270. Defendant Officers' actions constituted unlawful arrests and detainment of Plaintiff.

271. KPD Officers: Livengood, Caudle, Hoehman, McCrechen violations of Plaintiff's fraudulent tag NCIS entry in Kannapolis were the proximate cause of the Maryland arrest and constitutional violations against Plaintiff.

272. City of Kannapolis policy, and customs allowed officers conduct that precipitated the further violations of Plaintiff's constitutional rights.

50

273. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for including but not limited to mental emotional injury and pain, continuous mental anguish, endless hours of legal processes to recover custody of Plaintiff's from unlawful seizure, legal costs, humiliation, and embarrassment.

## CLAIM XII
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (Fourth Amendment-Malicious Prosecution)
### (Against MDTA Defendant Officers: Harris, Hart, Harmon, Jerry, City of Newburg, Charles County

274. Plaintiff incorporate herein all the prior factual allegations.

275. The Fourth Amendment requires police officers to possess sufficient probable cause before charging a criminal suspect with a crime.

276. As described herein, Defendant Officers and Defendant City of Newburg, through the actions of its policy maker, initiated criminal proceedings against Plaintiff wherein they charged Plaintiff with one count of 'hindering, obstruction'.

277. Defendants criminal charges against Plaintiff was without probable cause. Defendants knew that probable cause had been falsified. Defendants knew there was no legal justification, just cause, or any other legally valid reason for initiation of criminal charges against Plaintiff.

51

278. The criminal proceedings were ended in Plaintiff's favor with a jury trial not guilty verdict.

279. Only accepted customs and policies would have embolden officers to perpetrate such bold constitutional violations for such an extended nearly two year period of time against Plaintiff.

280. The individual Defendant Officers abused the criminal investigatory process by using it for the purpose of perpetrating an injustice, i.e., by having Plaintiff charged with a crime despite no evidence whatsoever to support the charge.

281. Further, Defendants pursued the charge they knew to be false for nearly two (2) years. Defendants commenced and continued the criminal proceedings against Plaintiff without any belief that Plaintiff was guilty of the crime charged.

282. Additionally, the criminal prosecution against Plaintiff was instituted for a purpose other than bringing Plaintiff to justice or securing the conviction of a guilty person.

283. Plaintiff was charged with a crime and the Defendants made, influenced, or participated in that decision through their unlawful actions as described herein.

284. Defendants acted intentionally, with actual malice and ill will, and without legal justification, knowingly, willfully, and wantonly evidencing a complete and

52

utter disregard for the truth in instituting legal proceedings against Plaintiff and evidenced a reckless and callous disregard for, and deliberate indifference to Plaintiff's constitutional rights.

285. Defendants were motivated in the pursuit of criminal charges against Plaintiff for improper, illegal and unconstitutional purposes including, but not limited to: Malice, Vexation, and Retaliation.

286. KPD Defendants are the proximate cause of Maryland Defendant violations.

287. City of Kannapolis is the final policy maker for the city. By allowing constitutional violations by its officers, it has become the local pattern and practice for constitutional violations to occur. KPD officers displayed that this is the accepted policy by not only violating basic constitutional rights, but committing fraud to perpetrate the constitutional violations.

288. As a result of Defendants' fraud, constitutional violations, malicious prosecution violations against Plaintiff, Plaintiff has suffered and continues to suffer damage including, but not limited to, loss of gainful full-time employment, loss of job opportunities from criminal record generated, fright, shock, continuous mental anguish, emotional distress, endless hours of legal preparation and nearly two (2) years of travel for vexatious litigation in Maryland and legal costs. Plaintiff seeks damages for the above-cited violations and harm caused.

## CLAIM XIII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (First, Fourth, Fifth and Fourteenth Amendments-Failure to Intervene)
### (Against Officers: Hoehman, Caudle, McCrechen)

289. Plaintiff incorporates herein all the prior factual allegations.

290. All Defendants had a duty to intervene when Defendant Livengood initiated an illegal detainment, false imprisonment, for Plaintiff exercising First, Fourth, Fifth and Fourteenth Amendment Substantive/Due Process rights.

291. All Defendants were present at the scene and had the opportunity and means to prevent the unlawful detainment, and false imprisonment and knew that there existed no lawful basis for the violations against Plaintiff.

292. All Defendants had a duty to intervene in the unlawful detainment, false imprisonment of Plaintiff.

293. All Defendants knew there was no legal basis of any kind, i.e., warrant, orders authorizing Plaintiff's property to be surrounded, Plaintiff's exit from property being blocked, by armed police officers presenting a threat of bodily harm, and Plaintiff's License tag to be run without legal cause, and license request while Plaintiff was in the driveway of Plaintiff's personal property.

294. Defendants did not intervene at any point.

295. All Defendants were acting with deliberate indifference, recklessness, gross negligence, intent, and/or knowledge of the acts being inflicted upon Plaintiff, and

54

as such, were the proximate cause of the harm suffered by Plaintiff.

296.  The foregoing conduct by these Defendants itself amounted to a constitutional violation of Plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

297.  City of Kannapolis is the final policy maker for the city. By allowing constitutional violations by its officers, it has become the local pattern and practice for constitutional violations to occur.

298.  KPD officers displayed that the accepted policy is not only violating basic constitutional rights, but committing fraud to perpetrate the violations.

299.  As a direct and proximate result of these individual Defendants' willful violation of Plaintiff's constitutionally protected rights, Plaintiff was harmed and suffered and will continue to suffer damage into the future, including but not limited to, mental anguish, severe emotion distress, fright and shock and cost and seeks damages from this harm.

### CLAIM XIV
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
**(First, Fourth, Fifth and Fourteenth Amendments-Failure to Intervene)**
**(Against Defendant Charles County Deputies: Botforf (formally Collins),**
**Bagwell, Johnston, Willis, G. Fields, and Bourgeois)**

300.  Plaintiff incorporates herein all the prior factual allegations.

55

301. Defendants had a duty to intervene when Defendant Harris initiated a illegal arrest for Plaintiff exercising First, Fourth, Fifth and Fourteenth Amendment rights.

302. Defendants were present at the scene when Plaintiff was placed under arrest by Officer Hart upon the order of Corporal Harris for 'hindering, obstruction'.

303. Defendants heard Corporal Harris state Plaintiff was under arrest because he had to "identify Plaintiff."

304. Defendants had conversed with Plaintiff extensively about Plaintiff's identity, circumstances of the traffic stop, knew Plaintiff's name and relationship to Plaintiff's son.

305. Defendants had the opportunity and means to prevent the unlawful arrest and knew that there existed no lawful basis for the violations against Plaintiff.

306. Defendants had a duty to intervene in Plaintiff unlawful false arrest.

307. Defendants knew there was no legal basis of any kind, i.e., warrant, or orders

308. Defendants did not intervene at any point.

309. Defendants had a duty to intervene base on the information that they had personally heard and based on the events they had personally observed.

310. Defendants were acting with deliberate indifference, recklessness, gross

56

negligence, intent, and/or knowledge to the above-described acts being inflicted upon Plaintiff, and as such, were the proximate cause of the harm suffered by Plaintiff.

311. The foregoing conduct by these Defendants itself amounted to a constitutional violation of Plaintiff's right under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

312. As a direct and proximate result of these individual Defendants' willful violation of Plaintiff's constitutionally protected rights, Plaintiff suffered and will continue to suffer damage into the future, including but not limited to, mental anguish, severe emotion distress, fright, shock and seeks damages for harm.

### CLAIM XV
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**
**(Fourth Amendment-Unlawful Search, Entry, Seizure)**
**(Against Defendants Botforf (formerly Collins), Bagwell, Charles County**
**KPD Officer: Supv. Livengood, City of Kannapolis**

313. Plaintiff incorporates herein all the prior allegations.

314. Charles County is a final policymaker over Charles County Sheriff's Department and therefore is a proper party to this lawsuit under Monnell v. Dep't of Social Services, 436 U.S. 658,(1978).

57

315. The Fourth Amendment requires law enforcement officers to possess sufficient probable cause or reasonable suspicion before search and seizure of a criminal suspect.

316. Defendant deputies, Botforf, Bagwell intentionally, knowingly and recklessly, unreasonably, and/or gross negligently searched, seized Plaintiff and Plaintiff's property without a warrant or any lawful basis.

317. At all times relevant, Plaintiff had a clearly established right to liberty, including right against unlawful search, and seizure pursuant to the Fourth Amendment to the United States Constitution.

318. At all times relevant, as a law enforcement officer acting under color of law, Defendants Botforf, Bagwell was required to obey the laws of the United States.

319. The acts complained of were carried out by Defendants pursuant to the customs, usages, practices, procedures and the rules of the Charles County. Defendants blatant disregard for the basic principles of policing such as lawful search and seizure exhibits a policy of such pattern and practices.

320. Kannapolis Defendants: City of Kannapolis, Livengood, violations of fraudulent NCIS tag entry in Kannapolis were the proximate cause of the unlawful, search, seizure violations against Plaintiff in Maryland.

58

321. City of Kannapolis is the final policy maker and by condoning blatant police officers' constitutional violations have acquiesced that role by allowing persistent constitutional violations by its officers and is evidenced by the officers' blatant violations of basic constitutional rights.

322. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered the following damages but not limited to Plaintiff's mental, emotional injury and pain, mental anguish, humiliation, and embarrassment, including mental anguish, trauma inflicted seeing Defendants forcibly enter Plaintiff's vehicle and remove Plaintiff's son. Defendants actions were the direct cause of Plaintiff's harm. Plaintiff seeks damages for the harm caused by Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kathy Stratton demands judgment and respectfully request the Court enter judgment in Plaintiff's favor, jointly and severally against all Defendants:

Full and fair compensatory damages in an amount to be determined by a jury,

    a. Punitive damages in an amount to be determined by a jury,

    b. awarding substantial compensatory damages, punitive damages, legal costs against each Defendant, and because of the malicious, willful

59

c. and wanton actions, assess punitive damages against each of the

   individual Defendants

d. and any other relief this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b)

on all matters so triable;

> Respectfully submitted
> Kathy Stratton, 1601 Carlton Avenue
> Kannapolis, NC 28083, Strattonmom@hotmail.com
> Tele.(704) 918-5353, Fax 704-224-2597

I, Kathy Stratton verify that the statements in this Complaint, Kathy Stratton,
Plaintiff v NC/MD Defendants, et al, are true and correct.

This the 31th day of January, 2023

Kathy Stratton

Before me appeared Kathy Stratton in Cabarrus County this the 31th day of
January, 2020 and affirmed and certified this document with her signature.
Notary public

My commission expires 3-27-2027

60